

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*Harlin DeWayne Hale*

**United States Bankruptcy Judge**

**Signed March 29, 2011**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **DENNIS H. BIRENBAUM,** | § | **CASE NO. 10-30237 HDH-7** |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| **WILLIAM T. NEARY, United States** | § | |
| **Trustee for Region 6,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | **ADVERSARY NO. 10-03079** |
| | § | |
| **DENNIS H. BIRENBAUM,** | § | |
| | § | |
| Defendant. | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

In the present complaint, William T. Neary, United States Trustee for Region 6 (the "U.S. Trustee") objects to the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), -(a)(4)(A) and -(a)(7) of the Bankruptcy Code. The parties entered into a joint pre-trial order with stipulated facts and law, which was entered by the Court on March 17, 2011, these are

hereby adopted and incorporated herein.  The Court held a trial on the U.S. Trustee's complaint on March 21-22, 2011. Upon conclusion of the presentation of testimony and evidence, the Court took the matter under advisement.  After consideration, the Court makes the following Findings of Fact and Conclusions of Law:

## I.  FINDINGS OF FACT

### A.    Background of Debtor and Events Leading to Debtor's Chapter 7 Case

1.      Dennis H. Birenbaum ("Birenbaum," "Defendant," or "Debtor") is a 64 year-old physician who was duly licensed to practice medicine within the State of Texas at all times relevant to this proceeding.

2.      Debtor is married to Brenda Banks Birenbaum.  They are separated.

3.      Approximately 20 years before Debtor filed his Chapter 7 bankruptcy case, Debtor and Brenda Birenbaum entered into a Premarital Property Agreement (the "Marital Agreement") dated July 18, 1990.

4.      The Marital Agreement provided that each spouse could from time to time contribute their respective separate property or income to pay ordinary and necessary expenses and to provide for the mutual support of the parties.

5.      The Marital Agreement had not been terminated or amended as of the Petition Date.

6.      Plaintiff filed his Complaint objecting to Debtor's discharge on April 19, 2010. Plaintiff filed an Amended Complaint on April 26, 2010.  Defendant timely filed a motion to dismiss the Amended Complaint on May 20, 2010.  Following certain stipulations and clarifications by the Plaintiff as to the allegations of the Amended Complaint, Defendant timely answered such complaint on July 9, 2010.

**Findings of Fact and Conclusions of Law**                                                    **Page 2**

7.      Debtor's personal bankruptcy filing was preceded by the financial demise and Chapter 11 bankruptcy case of Texas Hematology/Oncology Center, PA ("THOC"), a Texas professional association wholly owned by Debtor. Birenbaum had personally guaranteed a substantial portion of the debts of THOC and as of the Petition Date was a defendant in numerous state court lawsuits on account of such guaranties and indebtedness.  The majority of the debts that Birenbaum scheduled on his bankruptcy schedules were debts arising from his ownership of THOC.  During the pendency of its case, while Birenbaum was its chief officer, THOC did not file all of its operating reports, particularly for January and February 2009.

**B.      THOC Bankruptcy Case and Effect on Debtor**

8.      THOC remained in possession of its property and operated as a Chapter 11 debtor in possession until March 16, 2009, when this Court, *sua sponte*, appointed Dennis S. Faulkner ("THOC Trustee") as the Chapter 11 Trustee for THOC.  This Court took this action, in part, because Birenbaum "abandoned ship" by leaving THOC and going to work for MedicalEdge Healthcare Group, PA ("MedicalEdge")

9.      On April 20, 2009, this Court converted THOC's Chapter 11 bankruptcy case to a Chapter 7 case and Mr. Faulkner was then appointed as THOC's Chapter 7 Trustee.

10.     The THOC Trustee closed the sale of substantially all of THOC's medical assets to MedicalEdge on or about July 31, 2009.

11.     Brenda Birenbaum's employment by THOC was terminated when the THOC Trustee was appointed and THOC ceased operations.

C.    **Birenbaum's Bankruptcy Schedules and Statement of Financial Affairs**

12.    Birenbaum filed Schedules A through J in his Bankruptcy Case on January 27, 2010 (Bankruptcy Case Docket No. 25). Those Schedules reflected aggregate debts of approximately $33 Million, primarily arising from guaranties of debts related to THOC.

13.    Birenbaum filed his Statement of Financial Affairs ("SOFA") in his Bankruptcy Case on January 27, 2010. (Bankruptcy Docket No. 24).

14.    Birenbaum filed an Amended Statement of Financial Affairs ("Amended SOFA") in his Bankruptcy Case on February 3, 2010.  (Bankruptcy Docket No. 32).

15.    Birenbaum's Schedules, SOFA, and Amended SOFA reflect that Birenbaum's financial affairs were very complex, complicated, and intertwined with those of THOC.

D.    **Money Furnished to Brenda Birenbaum**

16.    During the 12 months prior to the Petition Date, Birenbaum wrote checks to his wife, Brenda Birenbaum, aggregating approximately $65,650.00 on bank accounts for which he was the sole signatory and in which he deposited his income and wages from MedicalEdge.

17.    The money that Birenbaum provided to his wife through those checks was used partially for the purpose of supporting and maintaining the Birenbaum family and household. Much of that money given to Brenda appears to have been used in extraordinary ways, such as for pet massages.  However, there is no evidence that Birenbaum provided any money to his wife to "hide" or "conceal" any of his property or to hinder, delay, or defraud any of his creditors.

18.    Birenbaum and Brenda Birenbaum testified credibly that the money that Birenbaum furnished his wife during the 12 months preceding Birenbaum's bankruptcy filing was an "allowance" for Brenda's use and also to pay certain household expenses.  Such payments to Brenda appear consistent with Birenbaum's personal financial practice and custom

during the parties' marriage.

19.     Birenbaum takes the position that he was not required to list on his SOFA or Amended SOFA the money that he furnished to his wife for her support and to pay household and other living expenses because that money was used for living expenses and family support and was not a "gift" or other "transfer" of property of the type and nature required to be listed or disclosed on such bankruptcy documents.  That was certainly the advice he was given by his attorney.  (*See*, Test. of John Lewis).

20.     More likely, even if the money furnished to Brenda Birenbaum as an "allowance" for her support and maintenance and to pay other household and family expenses should have been listed on Birenbaum's SOFA or Amended SOFA as transfers, for the reasons described below, it does not appear that Birenbaum intentionally failed to list those payments on his SOFA or Amended SOFA due to any desire to conceal such support payments or with any actual fraudulent intent.

21.     For example, Birenbaum provided copies of all of his personal and company bank statements for the 12 months preceding his bankruptcy filing to his Chapter 7 bankruptcy counsel, Mr. John Lewis, so that Mr. Lewis could review those bank statements to prepare accurate and complete bankruptcy Schedules and SOFA for Birenbaum. Mr. Lewis spent considerable time reviewing all of those bank records and determined and concluded that the checks written to Brenda Birenbaum as an "allowance" for her support and that of the Birenbaum family and household were not the type of payments or "transfers" required to be listed or disclosed in answer to the questions on the SOFA.

22.     More importantly on the finding of intent, Birenbaum disclosed all of the money he provided to his wife during the 12 months preceding his Chapter 7 bankruptcy filing to his

Chapter 7 Trustee and to the United States Trustee. Birenbaum promptly provided and furnished copies of all of his bank statements and canceled checks disclosing all of the checks written to Brenda Birenbaum to both his Chapter 7 Trustee and the United States Trustee shortly after his bankruptcy filing. Birenbaum took no action to prevent those parties from reviewing his bank statements disclosing the money that he furnished to his wife.

23.     Birenbaum reasonably relied upon his Chapter 7 bankruptcy counsel in preparing his bankruptcy Schedules, SOFA, and Amended SOFA.

24.     The U.S. Trustee has not carried his burden of proof that the money that Birenbaum furnished to his wife, Brenda Birenbaum, during the 12 months prior to his bankruptcy filing was fraudulently not disclosed on Birenbaum's SOFA or Amended SOFA as a "gift" or other "transfer" of Birenbaum's property during such period.

25.     To the extent that any burden of proof shifted to Birenbaum by reason of the money he furnished to his wife during the 12 months prior to the Petition Date, Birenbaum has carried his burden of proof to establish that such funds were not furnished to Brenda Birenbaum with the actual intent to hinder, delay, or defraud any of Birenbaum's creditors.

**E.      "Art" Listed on THOC's Bankruptcy Schedules and Monthly Operating Reports.**

26.     As president of THOC, Birenbaum signed monthly operating reports ("THOC Monthly Operating Reports") filed by THOC within 12 months of Birenbaum's Petition Date, and such operating reports refer to "art."  The THOC Monthly Operating Reports state: "Investment in Art - $871,987." In a Section 2004 examination, Birenbaum testified to a different value for the art.  The statement in the operating reports is not an unequivocal statement that THOC owned or possessed "art" having a value of $871,987.  That statement is somewhat consistent with the financial statements for THOC prepared by THOC's accounting staff and

**Findings of Fact and Conclusions of Law**                                                                **Page 6**

outside accountants as of the times in question.

27. The THOC Monthly Operating Reports were prepared by David Moore who was THOC's Chief Financial Officer and the THOC employee directly responsible for THOC's financial matters and for preparing such report. Birenbaum is a medical doctor. He is not an accountant or other financial professional. Birenbaum reasonably delegated responsibility for preparing the THOC Monthly Operating Reports to Mr. Moore and, to some extent, THOC's administrator, Mark Golner.

28. Birenbaum reviewed and signed the THOC Monthly Operating Reports as THOC's president but he did not prepare those reports. Birenbaum understood that the source of many of the line items and other financial information included in the Monthly Operating Reports were the THOC financial statements prepared by Messrs. Moore and Golner and/or THOC's outside, independent accountants, Sharon Perry of Brimer Perry & Associates.

29. Birenbaum, as president of THOC, reasonably relied upon David Moore, as THOC's Chief Financial Officer, and Brimer Perry & Associates, as THOC's independent accounting firm, to compile and prepare accurate financial statements consistent with generally accepted accounting practices for THOC, including preparation of the THOC Monthly Operating Reports.

30. The U.S. Trustee has not carried his burden of proof that: (a) Birenbaum had actual knowledge that any statement in THOC Monthly Operating Reports was false, or (b) Birenbaum made any alleged false statement in the THOC Monthly Operating Reports with actual fraudulent intent.

31. For the similar reasons, Birenbaum also did not make any false oath at his January 15, 2009 Bankruptcy Rule 2004 examination in connection with the value of "art"

owned by THOC.  The U.S. Trustee did not carry his burden of proof as to any alleged "false

oath" during such examination. Genuine material disputed issues as to the legal ownership and

value of the "art" existed at such time and there has never been any final judicial determination

in a contested proceeding that Birenbaum's testimony or position during his Rule 2004

examination was incorrect for any reason.

32.     The U.S. Trustee has not carried his burden of proof that: (a) there is any

materially false statement by Birenbaum in signing the THOC Monthly Operating Reports or

testifying during his Rule 2004 examination, (b) Birenbaum had actual knowledge that any

statement in any THOC Monthly Operating Reports or his Rule 2004 examination was false, or

(c) Birenbaum made any alleged false statement in the THOC Monthly Operating Reports or his

Rule 2004 examination with actual fraudulent intent.

**F.      Continued Care and Treatment of THOC Patients and**
**THOC Medical Records – The Transfer of the Medical Practice**

33.     Birenbaum was not subject to or restricted by any "noncompetition" or other

restrictive covenant or agreement preventing him from leaving THOC for another healthcare

provider at any time.

34.     THOC did not have any "property rights" as to Birenbaum's patients that he

attended and treated while an employee of THOC. Those patients were not property of THOC's

bankruptcy estate.

35.     Birenbaum had the right to continue to attend to and treat those patients following

his employment with MedicalEdge. All of Birenbaum's patients were acutely and critically ill

cancer patients who needed uninterrupted care and treatment by the physician of their choosing.

36.     Birenbaum became an employee of MedicalEdge after THOC no longer had the

financial resources or capability to continue to care for and treat Birenbaum's acutely ill cancer patients.  In this Court's opinion, Birenbaum and perhaps professionals working for him and THOC should have seen this development coming.  The public and Court could not because the Debtor did not file operating reports for January or February 2009, which would have revealed the substantial problems.

37.     In March 2009, THOC was out of money.  THOC was unable to, and could not have continued to, care for and treat Birenbaum's patients even if Birenbaum had not become an employee of MedicalEdge.  THOC and its patients were in an emergency situation.

38.     All of Birenbaum's patients were cancer patients who suffered from an acute illness. THOC could not prevent Birenbaum under the laws of the State of Texas, and specifically Section 15.50(b)(3) of the Texas Business and Commerce Code, from providing continuing care and treatment to such patients even after he left THOC's employment.

39.     This Court does not approve of Birenbaum's and others actions in this case in January and February, particularly withholding important information regarding THOC's dire straits.  Arguably, Birenbaum did not fulfill his fiduciary duties.  However, such breach is not grounds for denial of discharge under Section 727(a)(2), (4), or (7) of the Bankruptcy Code.

## II.  CONCLUSIONS OF LAW

1.     The Court has jurisdiction over the parties and the subject matter of the adversary proceeding pursuant to 28 U.S.C. § 1334 and the standing order of reference of the District Court. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(J). Venue is proper in this District under 28 U.S.C. § 1409(a). This adversary proceeding was timely filed under Section 546 of the Bankruptcy Code.

2.     The Complaint was filed in good faith by the U.S. Trustee, and the allegations

meet the requirements of Federal Rule of Bankruptcy Procedure 9011. The U.S. Trustee had a colorable claim to seek to bar Debtor's discharge.

3.  Section 727 exceptions to discharge are construed liberally in favor of the debtor and strictly against the creditor in furtherance of the "fresh start" policy of the Bankruptcy Code. *In re Wang*, 247 B.R. 211, 214 (Bankr, E. D. Tex. 2000). Plaintiff possesses the burden of establishing each element under Section 727 of the Bankruptcy Code that would prevent Defendant's discharge. *Beaubouef v Beaubouef,* 966 F.2d 174, 177 (5th Cir. 1992); Rule 4005 Fed. R. Bankr. P. The appropriate standard of proof is by a preponderance of the evidence. *In re Guenther*, 333 B.R. 759, 763 (Bankr. N.D. Tex. 2005).

4.  Section 727 provides in relevant part that:

(a) The court shall grant the debtor a discharge, unless-

\*\*\*

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed-

(A) property of the debtor, within one year before the date of the filing of the petition;

\*\*\*

(4) the debtor knowingly and fraudulently, in or in connection with the case-

(A) made a false oath or account; or

\*\*\*

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider

11 U.S.C. § 727(a)(2)(A), -(a)(4)(A) and -(a)(7).

5.      Fraud, as used in Section 727(a)(2)(A) of the Bankruptcy Code, requires actual intent.  *In re Pratt*, 411 F.3d 561, 565 (5th Cir. 2005). Nevertheless, actual intent may be inferred from the actions of the debtor and may be proven by circumstantial evidence.  *Id*.  The purpose of this section "is to deny a discharge to those debtors who, intending to defraud, transfer property which would have become property of the bankrupt estate."  *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003) (quoting *In re Chastant*, 873 F.2d 89, 90 (5th Cir.1989)).

6.      There is a presumption of fraudulent intent when property is transferred gratuitously to relatives, and once such presumption arises, the burden shifts to debtor to demonstrate that he lacked fraudulent intent.  *In re Pratt*, 411 F.3d at 566.

7.      The U.S. Trustee has failed to sustain his burden to prove all of the requisite elements under Section 727(a)(2)(A) as to the alleged fraudulent transfers of which he complains.

8.      To the extent any burden of proof was shifted to Debtor by reason of any transfer or transfers to a relative, Debtor has sustained his burden of proof that none of such transfers of which Plaintiff complains was made with actual fraudulent intent.

9.      The U.S. Trustee's objection to Debtor's discharge under Section 727(a)(2)(A) of the Bankruptcy Code are denied.

10.      Section 727(a)(4)(A) of the Bankruptcy Code provides that a debtor's discharge may be denied if the debtor "knowingly and fraudulently, in or in connection with the case, made a false oath or account."

11.      To establish a "false oath" under Section 727(a)(4)(A) of the Bankruptcy Code, the objecting party must show (a) the debtor made a statement under oath, (b) the statement was false, (c) the debtor knew the statement was false, (d) the debtor made the statement with

fraudulent intent, and (d) the statement related materially to the bankruptcy case. *In re Pratt*, 411 F.3d at 561.

12. The U.S. Trustee has failed to sustain his burden to prove all of the requisite elements under Section 727(a)(4)(A) as to the alleged false oaths of which he complains.

13. Birenbaum reasonably relied upon his Chapter 7 bankruptcy counsel in preparing, reviewing, and signing his Schedules, SOFA, and Amended SOFA. He did not sign those reports with a reckless disregard for the truth of any matters contained in such reports. Such reasonable reliance on professionals negates any inference of any fraudulent intent.

14. Birenbaum reasonably relied upon THOC's chief financial officer, THOC's administrator, and THOC's outside accounting firm when he signed the THOC Monthly Operating Reports. He did not sign those reports with a reckless disregard for the truth of any matters contained in such reports. Such reasonable reliance on professionals negates any inference of fraudulent intent.

15. The U.S. Trustee's objection to Debtor's discharge under Section 727(a)(4)(A) of the Bankruptcy Code is denied.

16. Section 727(a)(7) of the Bankruptcy Code provides that a debtor's discharge may be denied if the debtor "has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on within one year of the date of the filing of the petition, or during the case, in connection with another case, under this title".

17. The U.S. Trustee has failed to sustain his burden to prove all of the requisite elements under Section 727(a)(7) as to any act allegedly committed by Birenbaum in the THOC Bankruptcy Case that would constitute grounds for denial of Birenbaum's discharge in his personal bankruptcy case.

18.     The acts of Birenbaum in THOC's bankruptcy case within one year of the Petition Date are subject to much criticism.  In January and February 2009, he and his professionals should have filed operating reports and otherwise advised the Court and the parties of the dismal condition of THOC to avoid the meltdown that occurred.  However, such acts by Birenbaum, while embarrassingly below the standards required for an individual operating a business in Chapter 11, do not constitute grounds for denying his discharge in his personal Chapter 7 bankruptcy case.

19.     The U.S. Trustee's objection to Debtor's discharge under Section 727(a)(7) of the Bankruptcy Code is denied.

20.     The relief requested by Plaintiff is denied and Debtor is entitled to a discharge under Section 727 of the Bankruptcy Code.

If any of the foregoing findings of fact is more properly deemed a conclusion of law, and *vice versa*, such finding of fact shall constitute a conclusion of law and *vice versa*.  Counsel for the Debtor shall upload a judgment consistent with these Findings of Fact and Conclusions of Law with fourteen days.

###END OF FINDINGS AND CONCLUSIONS###